IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE FASTENERS ANTITRUST LITIGATION | : : : : | CIVIL ACTION<br><br>NO. 08-md-1912 |

**SURRICK, J.**                                                                                    **JANUARY  24, 2014**

## MEMORANDUM

Presently before the Court is Plaintiffs' Motion for Final Approval of Proposed Settlements with the Prym, YKK and Coats Defendants and Plaintiffs' Proposed Plan for Distribution of Settlement Funds (ECF No. 128).  For the following reasons, the Motion will be granted, and the settlements will be approved.

**I.     BACKGROUND**[1]

    **A.     Factual Background and Procedural History**

This multi-district litigation is based on allegations that four groups of corporate defendants engaged in a global "conspiracy to fix prices and allocate customers and markets in the United States and worldwide for 'Fasteners,'" in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  (Consol. Class Action Compl. ¶ 1, ECF No. 61.)  The term "Fasteners" includes zippers, snap fasteners, buttons, hooks, and other similar products used primarily in the textile, apparel, footwear, and luggage industries.  (*Id.* at ¶ 35.)  The instant Motion seeking final approval of the proposed settlements involve three groups of Defendants:  (1) the "Prym Defendants," which include William Prym GmbH & Co. KG, Prym Consumer USA, Inc., Prym

---

[1] The factual background of this multi-district litigation is more fully set forth in the Court's August 12, 2011 Memorandum denying Defendants' motions to dismiss the complaint. (ECF Nos. 92-93; *In re Fasteners Antitrust Litig.*, No. 08-1912, 2011 WL 3563989 (E.D. Pa. Aug. 12, 2011).)

Fashion, Inc., Prym Inovan GmbH & Co., Prym Consumer GmbH, EP Group S.A., Inovan GmbH & Co. KG, Prym Fashion GmbH, Prym Consumer Europe GmbH, and William Prym Inc.; (2) the "YKK Defendants," which include YKK Corporation, YKK Corporation of America, Inc., YKK (U.S.A.) Inc., and YKK Snap Fasteners America, Inc.; and (3) the "Coats Defendants," which include Coats Holdings, Ltd., Coats Holdings, Inc., Coats American, Inc., d.b.a. Coats North America, Coats North America de Republica Dominicana, Inc., and Coats & Clark, Inc.[2]

Plaintiffs Fishman & Tobin, Greco Apparel, Inc., Jolna Apparel Group LLC, and Norman Shatz Co., U.S.A. (collectively, "Plaintiffs") brought this consolidated class action on behalf of themselves and others who purchased fasteners in the United States from Defendants from January 1, 1991, until September 19, 2007 (the "Class Period"). (*Id.* at ¶ 2.)

On August 12, 2011, we denied Defendants' joint motion to dismiss. (ECF Nos. 92-93.) On August 6, 2012, we denied the YKK and Coats Defendants' Motion to certify the order denying the motion to dismiss for interlocutory appeal. (*See* ECF Nos. 118, 119.)

On August 12, 2013, Plaintiffs filed a motion seeking preliminary approval of proposed settlements with the Prym, YKK, and Coats Defendants, and seeking authorization to disseminate notice to the settlement class. (Mot. Prelim. Approval, ECF No. 124.) Attached as exhibits to Plaintiffs' motion for preliminary approval were the proposed settlement agreements with the Prym, YKK, and Coats Defendants. (Agreements, Mot. Prelim. Approval Exs. 1-3.)

On August 26, 2013, we granted Plaintiffs' motion. (Order Prelim. Approval, ECF No. 126.) In our Order, we stated that the "proposed settlements with Prym, YKK and Coats, as set

---

[2] Scovill Fasteners, Inc. was originally a named Defendant in this action. On April 19, 2011, Scovill filed for Chapter 11 bankruptcy. (*See* ECF No. 91.) Subsequently, on July 30, 2013, Plaintiffs voluntarily dismissed the action against Scovill pursuant to Federal Rule 41(a)(1)(A)(i).

forth in the respective Settlement Agreements, subject to final determination following proper notice and a fairness hearing, are sufficiently fair, reasonable and adequate to authorize dissemination of notice to the proposed settlement class (the "Settlement Class"). (*Id*. at ¶ 2.) We defined the Settlement Class as:

> All persons and entities who purchased Fasteners in the United States directly from a Defendant during the period from and including January 1, 1991 to an including September 19, 2007. Excluded from the Class are Defendants and their predecessors, successors, parents, subsidiaries, affiliates, divisions and governmental entities.

(*Id*.) The Preliminary Approval Order also appointed class representatives, appointed Co-Lead Counsel to represent the Settlement Class, approved the form and content of the Notice of Proposed Settlement of Class Action with the Prym, YKK and Coats Defendants and Hearing on Settlement Approval and Claim Form ("Notice"), and directed that the Notice be sent to all members of the settlement class, be posted on the internet, and be advertised in the Wall Street Journal. (*Id*. at ¶¶ 5-11.) Finally, the Preliminary Approval Order scheduled a fairness hearing for January 10, 2014, in order to, among other things, "determine the fairness, reasonableness, and adequacy of the proposed settlements with Prym, YKK and Coats . . . ." (*Id*. at ¶ 18.)

Pursuant to the Preliminary Approval Order, on October 25, 2013, counsel for the Settlement Class directed a printing company to mail, by first class mail, postage prepaid, 32,359 copies of the Notice to potential Settlement Class members. Notice of the proposed settlement was also published in the Wall Street Journal on November 7, 2013, and posted on a website, www.FastenersAntitrustLitigation.com. (Cert. of Mailing, ECF No. 131; *see also* Class Counsel's Report, ECF No. 132.)

The Notice to the Settlement Class advised that any objection to the proposed settlement, to the plan of distribution, or to Plaintiffs' counsel's application for fees, litigation costs, and

incentive awards, had to be filed with the Clerk by December 15, 2013. (Class Counsel's Report 2.) There were no objections filed by any potential Settlement Class members. The Notice to the Settlement Class also advised that requests for exclusion from the Settlement Class had to be sent to Settlement Class counsel no later than December 15, 2013. (*Id.*)[3] Settlement Class Counsel received one timely request for exclusion from American Soccer Company, Inc. (d/b/a Score Sports).

On November 25, 2013, class counsel filed the instant Motion for Final Approval of Proposed Settlements with the Prym, YKK and Coats Defendants and Plaintiff's Proposed Plan for Distribution of Settlement Funds. (Pls.' Mot., ECF No. 128.)[4]

A fairness hearing was held on January 10, 2014. Arguments for approval of the proposed settlement and for the award of counsel fees were heard at that time. (Jan. 10, 2014 Hr'g Tr. (on file with Court); Min Entry, ECF No. 133.)

### B. The Proposed Settlement Agreements

The Settlement Agreements each provide for the resolution of this multi-district litigation. Pursuant to the proposed settlements, the Prym, YKK, and Coats Defendants will make payments totaling $17.55 million. The Prym Defendants will make a payment of $1.1 million, the YKK Defendants will make a payment of $6.6 million, and the Coats Defendants will make a payment of $9.85 million. (Agreements.) Each Defendant has already made these required payments into an escrow account that has been accruing interest.

---

[3] Settlement Class Counsel refers to the four law firms that were appointed by the Court to serve as Co-Lead Counsel for the Settlement Class. These firms are Barrack, Rodos & Bacine, Kaplan, Fox & Kilsheimer LLP, Kohn, Swift & Graf, P.C., and Law Offices of Bernard M. Gross, P.C. (Order Prelim. Approval ¶ 6.)

[4] Class counsel also filed a joint petition for award of counsel fees, payment of costs and expenses, and award of incentive payments to the class representatives. (*See* ECF No. 129.) We will rule on this motion separately.

Shortly after the Court entered a case management order in August of 2009, Plaintiffs began "protracted settlement negotiations" with Prym, which culminated in a March 2, 2010 settlement agreement. Pursuant to the agreement, Prym agreed to pay 1.1 million and to assist Plaintiffs in the prosecution of their claims against the other Defendants. The settlement agreements with the Prym, YKK, and Coats Defendants all contain cooperation provisions, which require Defendants to cooperate in the prosecution of the claims against remaining Defendants. (Pls.' Mot. 5-6.) In exchange for the settlement payments and cooperation agreements, all class members, including Plaintiffs, provide a release to Defendants of certain claims related to the purchase of fasteners.

## II.     LEGAL STANDARD

According to Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). To approve a class action settlement, a court must determine that the settlement is "fair, adequate, and reasonable." *Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995). The district court has discretion to approve a class action settlement. *In re SFBC Int'l Inc., Sec & Derivative Litig.*, 310 F. App'x 556, 557 (3d Cir. 2009). A court makes this determination after holding a formal fairness hearing at which the proponents of the settlement "should explain why the proposed settlement is preferable . . . to continuation of the litigation." David F. Herr, Annotated Manual for Complex Litigation (Fourth) § 13.14 (2013). Moreover, the proponents of the proposed settlement bear the burden of establishing that it is fair, adequate, and reasonable. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995).

In determining whether a settlement is fair, adequate, and reasonable, district courts must consider nine factors articulated by the Third Circuit in *Girsh v. Jepson*, 521 F.2d 153 (3rd Cir. 1975). The *Girsh* factors are:

(1)  the complexity, expense and likely duration of the litigation;

(2)  the reaction of the class to the settlement;

(3)  the stage of the proceedings and the amount of discovery completed;

(4)  the risks of establishing liability;

(5)  the risks of establishing damages;

(6)  the risks of maintaining the class action through the trial;

(7)  the ability of the defendants to withstand a greater judgment;

(8)  the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9)  the range of reasonableness of the settlement fund in light of all the attendant risks of litigation.

*In re Cendant Corp. Litig.*, 264 F.3d 201, 231-32 (3d Cir. 2001) (citing *Girsh*, 521 F.2d at 157).

"In more recent decisions, the Third Circuit has suggested an expansion of the nine-prong test when appropriate to include what are now referred to as the *Prudential* considerations." *In re Flonase Antitrust Litig.*, No. 08-3149, 2013 U.S. Dist. LEXIS 83976, at *6 (E.D. Pa. June 14, 2013). The *Prudential* considerations include:

> the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other facts that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and

whether the procedure for processing individual claims under the settlement is fair and reasonable.

*Id.* at *6-7 (quoting *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 323 (3d Cir. 1998)); *see also In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010).

District courts are required to make findings with respect to each of the *Girsh* factors. *In re Pet Foods*, 629 F.3d at 350. Consideration of the *Prudential* factors, however, is not mandatory. *Id*. Instead, the *Prudential* factors are "illustrative of additional inquiries that in many instances will be useful for a thoroughgoing analysis of a settlement's terms." *Id*. at 350; *see also In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013) (noting that the *Prudential* factors "are permissive and non-exhaustive"). The Third Circuit has cautioned that district courts should not "substitute the parties' assurances or conclusory statements for [the district court's] independent analysis of the settlement terms." *In re Pet Foods*, 629 F.3d at 350-51. However, in light of the overriding public interest in settling class actions, weight should be given to the recommendations of experienced attorneys "who have engaged in arms-length settlement negotiations." *In re Automotive Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 341 (E.D. Pa. 2007); *see also In re Imprelis Herbicide Mktg.*, No. 11-2284, 2013 U.S. Dist. LEXIS 149323, at *24-25 (E.D. Pa. Oct. 17, 2013) ("[B]ecause a settlement represents the result of a process by which opposing parties attempt to weigh and balance the factual and legal issues that neither side chooses to risk taking to final resolution, courts have given considerable weight to the views of experienced counsel as to the merits of a settlement."); *Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995) ("Significant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of the class.") (internal quotation omitted).

### III. DISCUSSION

#### A. Certification of Class

Before considering whether the settlements are fair and reasonable, we must determine whether the proposed settlement class satisfies the class certification requirements of Rules 23(a) and 23(b). *In re Pet Foods*, 629 F.3d at 341.

##### 1. Rule 23(a)

Rule 23(a) contains four threshold requirements for class certification:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defense of the representative parties are typical of the claims or defense of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class

Fed. R. Civ. P. 23(a).[5] The burden to establish the requirements under Rule 23 is by preponderance of the evidence. *In re Imprelis Herbicide Mktg.*, No. 11-2284, 2013 U.S. Dist. LEXIS 149323, at *9 (E.D. Pa. Oct. 17, 2013) (citing *Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 257-58 (3d Cir. 2009)).

###### (i) Numerosity

There is no specific number of plaintiffs required in order to maintain a class action. However, the Third Circuit has indicated that a class of more than 40 plaintiffs will generally

---

[5] In the Court's August 26, 2013 Order granting Defendant's motion for preliminary approval of the proposed settlement, we made preliminary findings regarding the Class certification. Specifically, we determined that:
> For purposes of the proposed settlements only, the Court preliminarily finds that certification of the Settlement Class is warranted because: (a) the members of the Settlement class are so numerous that joinder is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) plaintiffs' claims present issues that are typical of the Settlement Class; and (d) the plaintiffs and the Settlement Class Counsel . . . will fairly and adequately represent and protect the interests of the Settlement Class.

(Order Prelim. Approval ¶ 4.)

meet the numerosity requirement.  *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).  Moreover, whether the numerosity requirement is met is determined not only by the size of the class but also by the geographic location of the class members.  *Marsden v. Select Medical Corp.*, 246 F.R.D. 480, 484 (E.D. Pa. 2007).  Here, Settlement Class Counsel indicate that that the proposed settlement class "is believed to include thousands of members who are geographically dispersed through the United States." (Pls.' Mot. 8.)  Under these circumstances, the numerosity requirement is clearly established since "a class of this size makes joinder of all members impracticable."  *In re Pet Foods*, 629 F.3d at 343.

          (ii)      <u>Commonality</u>

The second requirement to Rule 23(a) is that there are questions of law or fact common to the class.  Fed. R. Civ. P. 23(a)(2).  This prerequisite "is not a high bar:  it does not require identical claims or facts among class members."  *Chiang v. Veneman*, 385 F.3d 256, 265 (3d Cir. 2004).  Rather, the requirement is met when "the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."  *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994); *see also In re Microcrystalline Cellulose Antitrust Litig.*, 218 F.R.D. 79, 83-84 (E.D. Pa. 2003) (stating that "all that is required is that the litigation involve some common questions and that plaintiffs allege harm under the same legal theory").

Cases involving "the existence, scope, and efficacy of an alleged conspiracy" generally meet the commonality requirement because the allegations "present questions adequately common to class members."  *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 478 (W.D. Pa. 1999); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 528-29 (3d Cir. 2004); *In re Ins. Brokerage Antitrust Litig.*, No. 04-5184, 2013 U.S. Dist. LEXIS 108042, at *84 (D.N.J. Aug. 1, 2013) ("Due to the conspiratorial nature of allegations in antitrust and RICO actions,

such cases often present common questions of law and fact and are frequently certified as class actions.").

The Consolidated Class Action Complaint alleges that during the class period, Defendants engaged in a price-fixing conspiracy in the United States fasteners market. Specifically, the Complaint alleges that Defendants engaged in a "conspiracy to fix prices and allocate costumers and markets in the United States and worldwide for fasteners." (Consol. Class Action Compl. ¶ 1.) Class counsel have offered possible common questions of law or fact, specifically, whether or not Defendants entered into an agreement to fix prices and allocate customers. This is a question of fact common to all class members because it is an essential element of a conspiracy claim. (Pls.' Mot. 10.) In addition, whether the alleged agreement to fix prices amounted to a violation of the antitrust laws is also a question of law common to all class members. (*Id*.) We are satisfied that, in light of the conspiracy alleged in this antitrust action, the commonality requirement is met here.

(iii)   Typicality

The third prerequisite of Rule 23(a) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). In other words, the typicality factor asks "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006). The Third Circuit advises that "[i]f the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001). "As with numerosity, the Third Circuit has 'set a low threshold for satisfying' typicality, holding

that '[i]f the claims of the named plaintiffs and class members involve the same conduct by the defendant, typicality is established . . . .'" *In re Ins. Brokerage Antitrust Litig.*, 2013 U.S. Dist. LEXIS 108042, at *86 (quoting *Newton*, 259 F.3d at 183-84).

The claims of each of the class members arise from the alleged conspiracy to price-fix and allocate customers and markets in the United States for fasteners. In a case like this one where "it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent class members." *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 207 (E.D. Pa. 2001). The typicality requirement is met here.

>  (iv)    Adequacy of Representation

The final prerequisite of Rule 23(a) requires that class representatives fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). This requirement has dual concerns: to ensure that class representatives do not have interests antagonistic to the class and that class counsel have the necessary skills and qualifications to adequately represent the class. *In re Imprelis Herbicide Mktg.*, 2013 U.S. Dist. LEXIS 149323, at *14; *see also Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 181-82 (3d Cir. 2012) (noting that the adequacy of the representative parties requirement, "has two components: (1) concerning the experience and performance of class counsel; and (2) concerning the interests and incentives of the representative plaintiffs."); *Prudential*, 148 F.3d at 312 (noting that the adequacy requirement services two purposes: (1) to "test[] the qualifications of the counsel to represent the class," and (2) "to uncover conflicts of interest between named parties and the class they seek to represent") (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997)).

The four law firms that we appointed to serve as Settlement Class Counsel are highly qualified, and have extensive expertise and experience in the area of complex litigation and antitrust disputes. Moreover, the attorneys have all worked together on similar complex cases in the past, and have had success in resolving disputes. Settlement Class Counsel clearly have the necessary skills and qualifications to represent the proposed class. With regard to the second component, the interest of the proposed class representatives are the same as the other class members in that their injury arose from the same alleged price fixing conspiracy in the United States fastener market. Class Counsel advise that Plaintiffs, just like the other class members, are direct purchasers of fasteners from Defendants in the United States. (Pls.' Mot. 12.) Class Counsel also advise that there are no conflicts of interest among Plaintiffs and the other class members. (*Id.*) Plaintiffs' interests appear to be completely aligned with the interests of the other class members. The adequacy of representation requirement is met.

### 2. *Rule 23(b)(3) – Predominance and Superiority*

Next, we must consider whether the proposed class fits within one of the three categories of class actions enumerated in Rule 23(b). Plaintiffs contend that the settlement class qualifies under Rule 23(b)(3), which authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).[6] "Rule 23(b)(3)'s predominance

---

[6] In the Preliminary Approval Order, we made preliminary findings regarding class certification under Rule 23(b)(3):
> The Court further preliminarily finds, for the purposes of the proposed settlements only, that issues of law and fact common to the Settlement Class predominate over any issues affecting only individual members of the Settlement Class and that settlement of this action with respect to Prym, YKK and Coats is superior to other means available for fairly and efficiently adjudicating the controversy.

(Order Prelim. Approval ¶ 4.)

12

requirement imposes a more rigorous obligation upon a reviewing court to ensure that issues common to the class predominate over those affecting only individual class members." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011). Third Circuit precedent provides that "the focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Id.* In antitrust cases, the requirement of predominance is often easily met. *See Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging . . . violations of antitrust laws"); *In re Warfarin Sodium*, 391 F.3d at 528 (noting that allegations in a consumer fraud and antitrust action "naturally raise several questions of law and fact common to the entire class and which predominate over any issues related to individual class members, including the unlawfulness of [the defendant's] conduct under federal antitrust laws . . . , the causal linkage between [the defendant's] conduct and the injury suffered by the class members, and the nature of the relief to which class members are entitled"). Here, the same operative facts and legal arguments surrounding Defendants' conduct in conspiring to fix, raise, maintain, or stabilize prices of fasteners in the United States, apply to each class member. We are satisfied that questions of law or fact common to class members predominate over any questions affecting only individual members.

The second inquiry under Rule 23(b)(3) is whether a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternate available methods of adjudication." *Prudential*, 148 F.3d at 316 (internal quotation omitted). Here, prior to consolidation, thirty-five plaintiffs filed complaints in four United States district courts alleging

price-fixing conspiracies in the United States fasteners market. Absent class certification, this Court and others would be faced with numerous lawsuits, all arising out of the same alleged illegal conduct. Proceeding as a class action is the superior course not only because it will avoid unnecessarily wasting judicial resources, but also because it avoids the possibility of contradictory results.

### B.     The Settlement is Fair and Reasonable – the *Girsh* Factors

The Settlement Agreements may be approved only after the Court is satisfied that the settlement terms are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Generally, public policy favors the settlement of civil actions. "There is a 'strong presumption in favor of voluntary settlement,' particularly in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'" *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 484 (E.D. Pa. 2010) (quoting *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010)). As noted above, we are guided by the nine *Girsh* factors in considering whether to approve the proposed settlements.

#### 1.     *The Complexity, Expense and Likely Duration of the Litigation*

The first factor takes into consideration the "probable costs, in both time and money, of continued litigation." *In re Cendant Corp. Litig.*, 264 F.3d at 233 (internal quotation omitted). We previously observed that the antitrust action is "arguably the most complex action to prosecute" and that "[t]he legal and factual issues involved are always numerous and uncertain in outcome." *In re Automotive Refinishing Paint*, 617 F. Supp. 2d at 341 (quoting *In re Linerboard*, 296 F. Supp. 2d 568, 577 (E.D. Pa. 2003)).

Plaintiffs contend that continued litigation against Prym, YKK, and Coats would require significant additional expense to the Class and substantial delay before any class member would

see a recovery. Defendants challenged Plaintiffs' claims on jurisdictional grounds, and on sufficiency grounds, and when the Court denied Defendant's motions to dismiss, Defendants' sought and were denied an interlocutory appeal. Continued litigation would no doubt involve additional contested matters and likely appeals, which would in turn "become a costly and lengthy process for all parties." *In re Insurance Brokerage*, 282 F.R.D. at 103. This factor weighs in favor of approving the proposed settlements.

### 2. The Reaction of the Class to the Settlements

The reaction of the class to the proposed settlements has been overwhelmingly supportive. Approximately 32,359 copies of the Notice of Proposed Settlement were sent out to potential class members. Not one of the class members filed an objection either to the terms of the proposed settlements or to Class Counsel's fee application. (Class Counsel's Report 3.) In addition, only one of the class members sought exclusion from the settlement class. (*Id.*) The Third Circuit has found that "vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of settlement . . . ." *In re Cendant Corp. Litig.*, 264 F.3d at 235; *see also Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 144 (E.D. Pa. 2000) (stating that the "overwhelming positive" class response weighs in favor of approval of the settlement). We find it striking that in a potential class this large, not one class member lodged an objection to the proposed settlements. This factor weighs strongly in favor of finding the settlements fair, reasonable, and adequate.

### 3. The Stage of the Proceedings and the Amount of Discovery Completed

This *Girsh* factor looks at whether Plaintiffs had an "adequate appreciation of the merits of the case before negotiating" settlement. *Prudential*, 148 F.3d at 319 (internal quotation

omitted); *see also In re Cendant Corp. Litig.*, 264 F.3d at 235 (noting that the stage of proceedings factor "captures the degree of case development that class counsel have accomplished prior to settlement" and that "[t]hrough this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating") (quotation omitted). Courts are generally more inclined to find that this factor tilts in favor of approving settlement when discovery has been substantially completed. *See, e.g.*, *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1314 (3d Cir. 1993); *In re Flonase*, 2013 U.S. Dist. LEXIS 83976, at *9-10.

Here, settlement negotiations began before extensive formal discovery was conducted. However, significant information was nevertheless exchanged during the settlement process. Plaintiffs' settlement agreement with the Prym Defendants contained a cooperation provision, pursuant to which Prym provided Plaintiffs with extensive information and documents about the alleged conspiracy. Prym personnel also underwent interviews with Plaintiffs' counsel. Plaintiffs relied heavily on the information provided by Prym to draft the Consolidated Class Action Complaint. Class Counsel represents that with the information provided by Prym, they were able to "make an informed judgment regarding the reasonableness of the proposed Prym, YKK and Coats Settlements." (Pls.' Mot. 21.)

We are satisfied, based on the representations of highly qualified Class Counsel, that adequate discovery and information was provided by the Prym Defendants so that Class Counsel "were able to gain a full appreciation of the merits of the case as well as the legal theories and risks." *In re Pet Food Prods.*, 629 F.3d at 351.

### 4. The Risks of Establishing Liability and Damages

These two *Girsh* factors are closely related and are often addressed together. They require us to "survey the potential risks and rewards of proceeding to litigation in order to weigh

the likelihood of success against the benefits of an immediate settlement." *Warfarin*, 391 F.3d at 537.

With respect to the risks associated with establishing liability if Class Counsel elected to litigate the claims, Plaintiffs point out the substantial risk that they may not be able to prove that each defendant "actually engaged in the alleged collusion or that Defendants fraudulently concealed the conspiracy." (Pls.' Mot. 22.) Plaintiffs also suggest challenges in proving damages against Defendants, particularly when a trial would entail diametrically opposed expert testimony regarding the existence and nature of the damages. We are satisfied that the risks associated with proving liability and damages favors approving settlement at this time.

> 5. *The Risk of Maintaining the Class Action Through the Trial*

The Third Circuit has determined that consideration of this *Girsh* factor in "settlement-only" class actions is "perfunctory" since "the district court will always possess the authority to decertify or modify a class that proves unmanageable," and thus, "[t]here will always be a 'risk' or possibility of decertification, and consequently the court can always claim this factor weighs in factor of settlement." *In re Prudential*, 148 F.3d at 321.

In this case, the Court preliminarily certified the class for settlement purposes only. Thus, consistent with Third Circuit precedent, the inherent risks associated with bringing a class action to trial and maintaining a class action through trial weigh in favor of approving the settlements.

> 6. *The Ability of the Defendants to Withstand a Greater Judgment*

This *Girsh* factor requires us to consider whether Prym, YKK, and Coats could respectively withstand judgment for an amount significantly greater than the $1.1 million, $6.6 million and $9.85 million, provided for in the settlement agreements. *In re Cendant Corp. Litig.*,

17

264 F.3d at 240 (noting that this *Girsh* factor is "concerned with whether the defendants could withstand a judgment for an amount significantly greater than the Settlement"). However, "this factor does not require that the defendant pay the maximum it is able to pay." *Brown v. Am. Home Prods. Corp. (In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine)) Prods. Liab. Litig.*, No. 99-20593, 2000 U.S. Dist. LEXIS 12275, at *188 (E.D. Pa. Aug. 28, 2000); *see also In re Flonase*, 291 F.R.D. at 101 ("I follow my district court colleagues within the Third Circuit who regularly find a settlement to be fair even though the defendant has the practical ability to pay greater amounts.") (internal quotation omitted).

Class counsel represent that the each Defendant agreed to pay a "substantial sum" to the Settlement Class and that Prym at the time of settlement was in precarious financial shape. Class counsel represent that all three Defendants agreed to pay a "substantial sum . . . in light of the attendant risks plaintiffs would face if this case proceeds to trial." (Pls.' Mot. 24.) This factor is neutral in our consideration of the settlements proposed.

### 7. The Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of the All of the Attendant Risks of Litigation

Under the last two *Girsh* factors, which are also typically considered together, the court must "test two sides of the same coin: the reasonableness in light of the best possible recovery and the reasonableness in light of the risks the parties would face if the case went to trial." *In re Warfarin Sodium*, 391 F.3d at 538. As set forth above, the settlement terms are reasonable in light of the risks associated with proceeding to trial. We are satisfied that a proposed settlement of $17.55 million, which each class member may benefit from immediately upon approval of the settlement, together with avoiding the uncertainties of litigation and the delay that would necessarily result if this case would proceed to trial, all outweigh the attendant risks of litigation and militate strongly in favor of settlement.

        8.    *Prudential Factors*

Consideration of the *Prudential* factors also supports approval of the proposed settlements. A substantial amount of information has been provided to Settlement Class Counsel such that counsel are capable of making an informed decision about the merits of the case if it were to proceed to trial, and about the fairness of the settlement terms. We are satisfied that the underlying substantive issues were well developed. In addition, class members were given the opportunity to opt out. Significantly, only one member opted out of the settlement class, and no members objected to the proposed settlement. With regard to the procedure for processing individual claims under the settlement, it appears to be fair and reasonable. Again, there have been no objections to the procedures or to the settlement amounts proposed. The *Prudential* factors, like the *Girsh* factors, counsel strongly in favor of approving the settlements. Accordingly, we find the proposed settlements to be fair, reasonable, and adequate.

**IV.**    **CONCLUSION**

After reviewing the settlement agreements with the Prym, YKK, and the Coats Defendants in light of the *Girsh* factors and the *Prudential* factors, we are satisfied that the settlements are fair, reasonable, and adequate. Accordingly, for all of the reasons stated above, Plaintiffs' Motion for Final Approval of Proposed Settlements with the Prym, YKK and Coats Defendants and Plaintiffs' Proposed Plan for Distribution of Settlement Funds will be granted.

        Appropriate Orders follow.

        **BY THE COURT:**

        _____
        **R. BARCLAY SURRICK, J.**